Dear Mr. Joseph Getty Director of Policy Governor's Policy Office
An uncodified provision of the Fiscal Year 2004 budget bill prohibits the expenditure of State funds for "any policy or program" designed "exclusively or primarily to . . . facilitate the participation of faith-based organizations in State programs providing health, social, or educational services. . . ." You have requested our opinion on a series of questions on the interpretation of that provision:
1. Absent other legislation, does this provision bar the disbursement of State funds to a "community-based organization"?
2. Can a faith-based organization receive grant money from an existing State program if funds are also made available to secular groups?
3. Can State money be spent on a model grant to a faith — based organization to gauge how such groups compare with secular groups in the delivery of social services?
4. Would a State program of financial assistance to faith — based organizations violate any federal requirements?
5. Can the Governor create a State office of faith-based and community initiatives, if more than 50 percent of that unit's work deals with community initiatives rather than with faith-based initiatives?
6. How would the phrase "exclusively or primarily" in the law affect the expenditure of funds and the hiring of staff by a State office of faith-based and community initiatives?
For the reasons set out below we answer those questions as follows:
1. The State budget language does not necessarily bar the disbursement of State funds to a "community-based organization," as that term is defined in proposed federal legislation.
2. Faith-based organizations are eligible for grants under existing State programs that make funds available to secular organizations.
3. A one-time grant to a faith-based organization for demonstration purposes would probably not constitute a "program or policy" barred by the budget bill provision; however, such a grant would raise problems under the Establishment Clause of theFirst Amendment.
4. A State program of assistance targeted solely to faith — based organizations would likely violate the Establishment Clause, unless it were part of a broader set of programs that were neutral with respect to religion.
5. The Governor may create an State office of faith-based and community initiatives, consistent with both the budget bill language and the Establishment Clause, so long as the services of that office are available on a neutral basis to both faith-based and secular organizations.
1 Section 50 was added to the budget bill in the Senate and retained in the bill by the Conference Committee. The language was intended "to limit the use of State funds by faith-based organizations unless specifically authorized." Report of the Senate Budget and Taxation Committee on the Operating Budget (March 2003) at 268.
3 6. The phrase "exclusively or primarily" in the budget bill does not limit who may be hired for an office of faith-based and community initiatives or how much time an individual staff member may spend dealing with faith-based, as opposed to other, initiatives.
 I Background
The answers to your questions depend on an analysis of uncodified language in the Fiscal Year 2004 budget bill and of the constitutional prohibition against the establishment of religion. A. Section 50 Section 50 of the Fiscal Year 2004 budget bill provides that:
[N]o funds in this budget may be expended pursuant to, or in furtherance of, any policy or program the purpose of which is exclusively or primarily to promote or to facilitate the participation of faith-based organizations in State programs providing health, social or educational services, unless that policy or program is specifically authorized by an Act of the 2003 General Assembly.
Chapter 202, § 50, Laws of Maryland 2003.1
Neither the budget bill nor, to our knowledge, any other provision of State or federal law defines the phrase "faith-based organization." Presumably, any organization with a religious affiliation that offers social services, even if not aligned with a
2 Section 50 does not affect funding through these methods. Not only are such programs not "exclusively or primarily" designed to benefit faith-based organizations, but they are also specifically authorized by legislation.
4 particular denomination, would fall into this category. In our view, a program or policy "primarily" targets faith-based organizations if its participants are more likely than not to be such organizations or if a majority of its funding is directed to such organizations. See Schrader v. State, 69 Md. App. 377,390-91, 517 A.2d 1139 (1986) (defining "primarily" as more than 50 percent). Thus, if the purpose of a policy or program is to achieve such a distribution of funds, it is subject to the constraints of § 50.
In the past, the State has funded some secular activities of faith-based organizations through grants authorized in the annual budget bill and made through the Board of Public Works, through projects approved in the capital budget, and through individual bond bills.2 Nevertheless, there is no policy or program specifically authorized by legislation enacted this year or any other year "exclusively or primarily to promote or to facilitate the participation of faith-based organizations" in State programs. Thus, the proviso in § 50 has not been triggered and the funding condition is effectively a prohibition against future State funding of such a program or policy. Of course, the budget bill language would not prevent the administrative creation for example, by executive order of an "exclusively or primarily" faith-based initiative program, but State funds could not be used to fund it.
B. Establishment Clause
The Establishment Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion." The Establishment Clause applies to the states through the Fourteenth Amendment.
The leading case applying the Establishment Clause with respect to grants to faith-based organizations is Bowen v. Kendrick,487 U.S. 589 (1988). That case involved a challenge to provisions of the Adolescent Family Life Act, a federal statute that permitted
3 The Lemon test, stated in Lemon v. Kurtzman, 403 U.S. 602
(1971), looks to whether a challenged governmental action serves a secular purpose, whether its primary effect is the advancement of religion, and whether it requires excessive entanglement between church and state.
In Agostini v. Felton, 521 U.S. 203 (1997), the Court altered this test somewhat, treating excessive entanglement as an element of the effects prong of the test. See 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-006 (March 17, 2003)]. The resulting test is simply one of purpose and effect, with the effect prong requiring consideration of three elements: government indoctrination, whether recipients are defined in terms of religion, and excessive entanglement. See Recent Developments: Faith Based Initiatives, 39 Harv. J. Legis. 475, 484 (2002).
4 The continuing vitality of the "pervasively sectarian" criterion has been questioned by the federal appellate courts, and has distinctly diminished in importance. See 88 Opinions of the Attorney General __ (2003) [Opinion No. 03-006 (March 17, 2003)]. However, it has not been formally discarded. See Saperstein, Public Accountability and Faith — Based Organizations: A Problem Best Avoided, 116 Harv. L.Rev. 1353, 1378 (2003) ("With all of the changes from the Supreme Court in the church-state arena, there is one central principle that must be kept in mind: the Supreme Court has never approved direct government cash support for pervasively sectarian institutions").
5 grants to religious organizations, as well as other private groups, for services relating to adolescent sexuality and pregnancy. The Court first applied the well-known Lemon test3 and concluded that the law was not facially invalid. Specifically, the Court found that the statute served the valid secular purpose of reducing social and economic problems caused by teenage sexuality, pregnancy, and parenthood, that it was neutral as between religious and nonreligious grantees and therefore did not have the primary purpose of advancing religion, and that it did not require excessive entanglement between government and religion. In reaching the conclusion that the Act did not have a primary effect of advancing religion, the Court noted that there was no indication that a significant proportion of the funds would go to pervasively sectarian organizations,4 and also found no reason to assume that religious grantees were not capable of carrying out duties under the statute in a lawful and secular manner. See also DeStefano v. Emergency Housing Group, Inc.,247 F.3d 397 (2d Cir. 2001) (allocation of public funds to private alcohol treatment facility that includes Alcoholics Anonymous in its program not facially unconstitutional).
6 After holding that the law was not facially invalid, the Kendrick Court addressed the issue of whether the Act was applied in an unconstitutional manner. Finding itself unable to decide this issue on the facts before it, the Court remanded the case for further findings on issues such as the amount of the aid that was flowing to pervasively sectarian organizations, and whether the aid had been used to fund specifically religious activities. On remand, the case was apparently settled after the district court denied cross motions for summary judgment. Kendrick v. Sullivan, 766 F. Supp. 1180 (D.D.C. 1991). However, a similar issue arose in American Civil Liberties Union v. Foster,2002 WL 1733651 (E.D.La. 2002). In that case, the Court found that Louisiana's Abstinence Education Project, set up to distribute funds from the federal and state governments for abstinence education, was likely to violate the Establishment Clause where required reports from some of the organizations showed that the funds had been used to advance religious objectives.
It is clear that religious activities may not be conducted with grant funds received directly from the government. DeStefano v.
Emergency Housing Group, Inc., 247 F.3d 397, 416 (2d Cir. 2001); Pedreira v. Kentucky Baptist Homes for Children,186 F. Supp.2d 757 (W.D.Ky. 2001). However, recent cases have raised the possibility that even funding of religious activities may be upheld where the funding is a result of the private choices of individual beneficiaries. In Freedom from Religion Foundation, Inc. v.
McCallum, 324 F.3d 880 (7th Cir. 2003), the Seventh Circuit found no Establishment Clause violation in state funding for halfway houses that operated from a religious perspective as well as for secular houses, where the choice of the house to use was left up to the individual. See also Recent Developments: Faith Based Initiatives, 39 Harv. J. Legis. 475, 491 (2002). Similarly, in Mitchell v. Helms, 530 U.S. 793 (2000), which involved a program of aid to schools based on enrollment, the Court relied on the factor of individual choice to conclude that any indoctrination that took place in the schools receiving the aid could not reasonably be attributed to the government, where both secular and religious schools were equally eligible for the funding. See also Zelman v. Simmons — Harris, 536 U.S. 639 (2002) (upholding a system of school vouchers that could be used at either religious or secular schools).
7 While you have not asked about any specific program, the above cases make clear that the Establishment Clause does not bar all expenditures of State funds for services provided by faith-based organizations. However, such funds may be spent only for a secular purpose, and may not fund religious activities unless the funding reflects an individual private choice.
 II Analysis
A. Grants of State Funds to Community-Based Organizations
You asked whether § 50 of the Fiscal Year 2004 budget bill prohibits a State grant to a "community-based organization."
Although the phrase "community-based organization" does not appear in § 50, it does appear in recent federal initiatives designed to expand the participation of faith-based organizations in federal social services funding. The concept appears in both a recent presidential executive order and in legislation currently pending in Congress.
President Bush's 2002 Executive Order on Equal Protection of the Laws for Faith-Based and Community Organizations refers to faith-based and "other" community organizations although it contains no definition of either term. Executive Order 13279, 67 Fed. Ref. 77141 (December 16, 2002). It is evident that, although a faith-based organization may be a "community-based organization," the latter phrase is a broader term that includes secular groups.
Legislation pending in Congress defines a "community-based organization" as "a non-profit corporation or association that has (1) not more than 6 full-time equivalent employees who are engaged in the provision of social services; or (2) a current annual budget (current as of the date the entity seeks assistance under this section) for the provision of social services, compiled and adopted in good faith, of less than $450,000." See S.272, § 701(f). Although faith —
8 based organizations are not expressly included in this religiously — neutral definition, it is also clear that S.272 would treat faith-based organizations as a subset of community-based organizations. See § 801(prohibiting various governmental actions against "non — governmental organization[s]" such as removal of religious icons, religious references in charter documents, and religious qualifications for members).
Because of the distinction between a community-based organization, which may be secular or faith-based, and a group that is entirely faith-based, it is our opinion that § 50 does not ban the disbursement of State funds to community-based organizations, as long as there is no intention of using that rubric primarily to benefit faith-based organizations.
B. Eligibility of Faith-Based Organizations for Grants under
Existing Programs
You asked whether § 50 affects the eligibility of a faith-based organization to receive a grant under an existing program that also makes grants to secular groups.
We are not aware of a State grant program that is not administered in a religiously-neutral manner or that is intended primarily to benefit faith-based organizations. Existing State grant programs do not have the exclusive or primary purpose of benefitting faith-based organizations. Thus, as a matter of statutory interpretation, we conclude that § 50 would not bar the disbursement of grant money to both secular and faith-based groups under existing programs.
Moreover, in our view, the Establishment Clause of theFirst Amendment does not prohibit grants to faith-based organizations where funds are available to secular groups as well on a neutral basis. However, care must be taken to ensure that State funds do not finance religious activities, at least where grant recipients are determined by the government rather than by the private choices of the individuals served.
9 C. Demonstration Grant to a Faith-Based Organization
You asked whether the State may make a "model grant" to a faith-based organization to gauge how such groups compare with secular organizations in the delivery of services.
While a one-time model grant to a single faith-based organization may not amount to a "program or policy" prohibited by § 50, it would raise concerns under the Establishment Clause. As discussed above, a government grant program must have a secular purpose and not have the primary effect of advancing religion.
Funding a single faith-based organization to compare faith — based groups to secular ones could be deemed not to serve a secular purpose for a number of reasons. First, funding of a single program is unlikely to provide significant information about the efficiency of faith-based organizations in general, since it is far from clear that these groups are fungible, or that data from any particular group would be representative of all. More useful data is available to the State by studying the performance of the faith-based organizations that currently receive State funds to provide a variety of services, such as adoption, job training, services to welfare recipients, soup kitchens, and homeless shelters.
Additionally, a major factor in the Establishment Clause analysis of the effects of grant programs is whether the funds are available to religious and secular organizations on a neutral basis.
This is true whether the grants are made directly by the government or indirectly based on the choices of individuals. A grant to a single faith-based organization to gauge how such groups compare with secular groups would not be neutrally available, and thus might be found to have the primary effect of advancing religion. Moreover, the funding of a single faith-based organization, presumably selected by the government, would raise issues of government endorsement of one religious group. Everson v. Board of Education, 330 U.S.
1,15 (1947).
5 The Doe case involved a Clergy in Schools program that ultimately was found not to meet the standard of neutrality. Oxford v. Beaumont Independent School Dist., 224 F. Supp.2d 1099 (E.D.Tex. 2002).
6 In 1996, Congress enacted "Charitable Choice" provisions in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, these are designed to ensure that low-income families receive Temporary Assistance for Needy Families (TANF) services, including those provided by faith-based organizations. See 42 U.S.C. § 604a; see also 68 Fed. Reg. 56449-56466 (September 30, 2003). These provisions relate to existing programs administered by the State and would not affect a new general program of State financial assistance to faith-based organizations.
10 D. Federal Requirements
You asked whether a State program of financial assistance to faith-based organizations would violate any "federal requirements."
It is our opinion that a program specifically designed to provide financial assistance solely to faith-based organizations would present a significant risk of violating the Establishment Clause. We assume that such assistance would be provided to fund services that the State has a legitimate interest in providing, and not religious activities, with the result that the program would have a secular purpose.
However, a program established solely to provide such assistance through faith-based organizations could very well be found to have an impermissible primary effect of advancing religion. See Recent Developments: Faith Based Initiatives, 39 Harv. J. Legis. 475, 483 (2002). We believe that such a program could survive only if, when considered in context, including other programs similar in purpose and function, the "programs together comprise a mosaic that is neutral with regards to religion." Doe v. Beaumont Independent School Dist.,240 F.3d 462, 464 (5th Cir. 2001) (en banc).5
As to other federal requirements, we are not aware of an existing federal statute that speaks generally to financial assistance to faith-based organizations.6 Federal agencies are implementing President Bush's 2002 Executive Order through regulations. See, e.g., 68 Fed. Reg. 56409 — 56415 (Sept. 30, 2003) (Participation in
11 Justice Department Programs by Religious Organizations). We do not believe either the Executive Order or these regulations are intended to restrict State efforts in this area.
E. Creation of State Office of Faith-Based and Community Initiatives
You asked whether the Governor could create an office of faith-based and community initiatives if more than 50 percent of that entity's work consisted of "community initiatives."
If the reference to "community initiatives" denotes initiatives involving secular organizations, then the office would not be a program "primarily" benefitting faith-based organizations. In our view, as a matter of statutory construction, such an action would not violate § 50. However, if "community initiatives" refers to projects involving "community-based organizations," which, as noted above, may be faith-based or secular, the answer is not as clear. As indicated in the answer to your first question, if the funding of "community initiatives" were designed primarily to assist faith-based organizations, then the office could be ineligible for funding under § 50.
The Establishment Clause would not necessarily bar the creation of an office that focused on community initiatives, including those that are faith-based. So long as the services of this office were available on a neutral basis to non-religious community organizations, it would not be necessary, as a matter of constitutional law, to limit the work of the office so that less than 50 percent related to faith-based organizations. In both Zelman v. Simmons — Harris, 536 U.S. 639 (2002), and Mueller v. Allen, 463 U.S. 388 (1983), the Supreme Court upheld neutral programs where over 90 percent of the funds involved were actually paid on behalf of children in religious schools. Moreover, the effort to adhere to a limit in the sense of reserving a fixed amount of work time for faith-based initiatives could undermine the required neutrality of the program.
12 F. "Exclusively or Primarily"
You asked whether the phrase "exclusively or primarily" in § 50 would affect the expenditure of funds and the hiring of staff by a State office of faith-based and community initiatives.
If less than 50 percent of the expenditures of such an office were devoted to a program of faith-based assistance, such expenditures would not run afoul of § 50. Moreover, the funding prohibition is tied to money spent on a "policy or program." It does not purport to limit who may be hired to work in such an office or how much time an individual employee may devote to faith-based as opposed to community-based initiatives. So long as no more than 50 percent of the expenditures of the office dealt with faith-based initiatives, it would not offend § 50.
 III Conclusion
For the reasons set forth above, we conclude:
1. Section 50 does not necessarily bar the disbursement of State funds to a community-based organization.
2. Faith-based organizations are eligible for grants under existing State programs that make funds available to secular organizations.
3. A one-time grant to a faith-based organization would probably not constitute a program or policy barred by § 50; however, such a grant would raise problems under the Establishment Clause of the First Amendment.
4. A State program of assistance targeted solely to faith — based organizations would likely violate the Establishment Clause, unless it were part of a broader set of programs that were neutral with respect to religion.
13 5. The Governor may create a State office of faith-based and community initiatives, consistent with both § 50 and the Establishment Clause, so long as the services of this office are available on a neutral basis to both faith-based and secular organizations.
6. The phrase "exclusively or primarily" in § 50 does not limit who may be hired for an office of faith-based and community initiatives or how much time an individual staff member may spend dealing with faith-based, as opposed to other, initiatives.
This advice is necessarily general, in the absence of specific details on the duties of an office governing community and faith — based initiatives or the operation of its programs. Nevertheless, despite the constraints of the First Amendment and § 50, it is not impossible to construct a program to promote the participation of community-based and faith-based organizations in the delivery of social services. We would be happy to review whatever proposal you develop to ensure that it meets the requirements of the Constitution and § 50.
J. Joseph Curran, Jr.
Attorney General
Robert A. Zarnoch Assistant Attorney General
Kathryn M. Rowe Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice *Page 177