Alicia M. **PEDREIRA,** et al, Plaintiffs,

v.

**KENTUCKY BAPTIST HOMES FOR CHILDREN, INC.,** et al, **Defendants.**

No. CIV.A.3:00CV–210–S.

United States District Court, W.D. Kentucky, at Louisville.

July 23, 2001.

758

David A. Friedman, Fernandez, Friedman, Grossman & Kohn, Louisville, KY, Matthew Coles, Kenneth Y. Choe, Amer. Civil Liberties Union Foundation, New York City, Vicki I. Buba, Stone, Pregliasco, Haynes & Buba, Louisville, KY, Steven K. Green, Ayesha Khan, Alex J. Luchenitser, Margrett F. Garrett, Americans United for Separation of Church and State, Washington, DC, Michael Adams, Lambda Legal Defense & Educ. Fund, New York City, for plaintiffs.

Andrew J. Russell, John O. Sheller, Emily S. Norris, Jeffrey S. Schafer, Smith & Smith, Louisville, KY, Patrick T. Gillen, Robert J. Muise, Kimberly A.R. Daniels, Thomas More Center for Law & Justice, Ann Arbor, MI, Gregor S. Baylor, Annan-

dale, VA, for Kentucky Baptist Homes for Children, Inc., defendant.

Jonathan D. Goldberg, Jan M. West, Goldberg & Simpson, Louisville, KY, for Robert Stephens, Viola Miller, defendants.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

On October 23, 1998, after approximately seven months of employment, Alicia Pedreira ("Pedreira") was terminated from her position as a Family Specialist at Spring Meadows Children's Home, a facility owned and operated by Kentucky Baptist Homes for Children, Inc. ("KBHC").

The decision to terminate her was made after a photograph taken of her together with her acknowledged "life partner" was displayed at the Kentucky State Fair, and her lesbian lifestyle became known to KBHC. The termination statement she received stated "Alicia Pedreira is being terminated on October 23, 1998, from Kentucky Baptist Homes for Children because her admitted homosexual lifestyle is contrary to Kentucky Baptist Homes for Children core values."

KBHC then issued a public statement with respect to the termination to the effect that "[i]t is important that we stay true to our Christian values. Homosexuality is a lifestyle that would prohibit employment."

KBHC has required that all its employees "exhibit values in their professional conduct and personal lifestyles that are consistent with the Christian mission and purpose of the institution." KBHC also adopted an employment policy which stated that

[h]omosexuality is a lifestyle that would prohibit employment with Kentucky Baptist Homes for Children. The Board does not encourage or intend for staff to seek out people within the organization who may live an alternative lifestyle, we will however, act according to Board

policy if a situation is brought to our attention.

Complaint, ¶¶ 25, 29, 34, 35.

Pedreira filed this action challenging her termination and the policies adopted by KBHC on the ground that its actions constitute religious discrimination.

A second plaintiff in this action, Karen Vance ("Vance"), is a social worker living in California. She has alleged that she wishes to relocate to Louisville to be closer to her aging parents. She claims that there are employment positions open at KBHC for which she is qualified, but for which she has not applied because she is a lesbian. She has asserted that her application for a position with KBHC would be futile in light of its formal and well-publicized policy prohibiting gays and lesbians from employment. Complaint, ¶¶ 41, 42, 43. Vance claims that KBHC's hiring policy constitutes religion-based employment discrimination.

Seven individuals, identified in the complaint as Kentucky taxpayers, are also plaintiffs in this action. They claim that government funds provided to KBHC are used to finance staff positions which are filled according to religious tenets, and to provide services designed to instill Christian values and teachings in the children. These plaintiffs contend that state money is thus used for religious purposes, in violation of the United States Constitution.

The Commonwealth of Kentucky has been sued on the ground that it violated the Establishment Clause of the First Amendment by providing government funds to KBHC. There is no dispute that KBHC has contracted with Kentucky and received government funds for the operation of its facilities. KBHC provides services to youth placed in its care as wards of the state.

The defendants have filed a number of motions seeking dismissal of the complaint. They will be addressed *seriatim.*

## A. RELIGION–BASED EMPLOYMENT DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000e–2(a)(1)), AND THE KENTUCKY CIVIL RIGHTS ACT (KRS 344.010(1))

Title 42 of the United States Code, Section 2000e–2(a)(1) (hereinafter referred to as "Title VII") provides in part that "[i]t shall be an unlawful employment practice to fail or refuse to hire or to discharge any individual ... because of such individual's ... religion." There is no dispute that homosexuals have been found entitled to the same protections under Title VII as heterosexual individuals with respect to their right to be free from religious discrimination.

KBHC contends that its policy against the employment of homosexuals in general, and its treatment of Pedreira in particular, is openly discriminatory with regard to homosexual conduct, but does not constitute religious discrimination, and is therefore not prohibited under either Title VII or the Kentucky Civil Rights Act.[1]

■ The plaintiffs concede that Title VII does not prohibit employment discrimination on the basis of homosexuality. Homosexuals have not been recognized as a class protected by Title VII. *DeSantis v. Pacific Telephone & Telegraph Co.*, 608 F.2d 327 (9th Cir.1979). Thus, KBHC's intentional exclusion of homosexuals from employment does not run afoul of Title VII unless it constitutes discrimination on the basis of religion.

■ Title VII prohibits employers from using an individual's religion as a criterion for discharging or refusing to hire. The courts have found a corollary to this prohibition. Title VII also precludes an employer from discriminating by utilizing an individual's failure to embrace the *employer's* faith. *Blalock v. Metals Trades, Inc.*, 775 F.2d 703 (6th Cir.1985) (employee discharged until he "got things straightened out" with employer's religious leader); *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033 (10th Cir.1993) (allegation that Mormon supervisors gave negative evaluation because employee non-Mormon); *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir.1997) (employee preached to from Bible, told she should go to employer's church to hear "altar call," and told to "save" herself to avoid dismissal from employment).

Pedreira and Vance contend that living a homosexual lifestyle constitutes a failure to embrace KBHC's religious faith or practice. Thus they contend that it is impermissible to base employment decisions upon this lifestyle choice.

The parties agree that KBHC does not require its employees to practice any religion. They are not required to attend religious services nor are they required to be members of or believers in any particular religion or religious group. The plaintiffs contend, however, that KBHC's behavioral requirement, although facially

---

**1.** Pedreira's discrimination claim has been brought only under the Kentucky Civil Rights Act. Vance filed an EEOC complaint and has alleged violation of both Title VII and the Kentucky Act. The Kentucky Act is modeled after Title VII, and courts routinely look to federal law for guidance in interpreting and applying the Kentucky statute. *See, Morris v.* *Oldham County Fiscal Court,* 201 F.3d 784, 793 (6th Cir.2000) ("The language of the KCRA generally tracks the language of Title VII and, thus, should be interpreted consonant with federal interpretation."). We will refer to federal law in our analysis of the civil rights claims of both Pedreira and Vance.

religion-neutral, requires conformity with KBHC's religious beliefs in actual practice. In order for an employee's professional and personal comportment to be acceptable in the eyes of KBHC, it must be "consistent with the Christian mission and purpose of the institution." Thus the plaintiffs argue that a requirement that employees behave in a manner which is consistent with KBHC's religious beliefs constitutes an unconstitutional imposition of KBHC's religion upon them as a condition of employment.

KBHC contends that it does not wish to be viewed as accepting homosexuality, and does not wish to employ homosexual individuals for that reason. KBHC's concern is with the projected persona of its employees which is said to reflect upon the public image of KBHC. KBHC urges that its policy on employee behavior is consistent with its religious values, but stands independent of any form of religious faith or practice.

As we are required to do by *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and its progeny, the court takes the allegations of the complaint as true for purposes of analysis.

This is an action brought under statutes that protect the religious freedom of individuals in the workplace. The complaint's second claim for relief contains the conclusory statement that Pedreira was discharged and Vance would not be hired because of their "failure to hold and adhere to KBHC's religious beliefs concerning homosexuality." ¶ 64. However, there are no facts alleged which support this contention.

█ The plaintiffs do not allege that their individual lifestyle choices are premised upon their religious beliefs, or lack thereof. They do not state whether they accept or reject Baptist beliefs in particular, or whether they practice any religion. Rather, they focus on KBHC's so-called "impermissible religious motivation," Complaint, ¶ 64, in an attempt to turn this claim involving non-religious lifestyle choices into one based upon religious discrimination. However, Title VII does not prohibit an employer from having a religious motivation.

█ While KBHC seeks to employ only persons who adhere to a behavioral code consistent with KBHC's religious mission, the absence of religious requirements leaves their focus on behavior, not religion. KBHC imposes upon its employees a code of conduct which requires consistency with KBHC's religious beliefs, but not the beliefs themselves.

Pedreira and Vance would place the focus on the underlying reasons for KBHC's policies regarding personal and professional comportment. The religious foundation for KBHC's policies is not relevant to the analysis however because KBHC does not condition employment on the acceptance or practice of its religious beliefs. Employees need not embrace the religion-based moral code which the KBHC espouses in order to comply with the conduct requirement. The code of conduct, although requiring behavior which is consistent with KBHC's values, leaves the religious freedoms of employees and potential employees unfettered. The civil rights statutes protect religious freedom, not personal lifestyle choices. There is no religious discrimination in an employment policy which does not require and does not inhibit the practice of or belief in any faith. The cases upon which the plaintiffs rely, in which employers required employees to believe or belong, are therefore not applicable.

*Hall v. Baptist Memorial Health Care Corporation*, 215 F.3d 618 (6th Cir.2000) is illustrative. Hall had been employed by a Southern Baptist Convention-affiliated college as a student services specialist.

While so employed, Hall was ordained as a lay minister in a non-denominational Christian church which solicited homosexual members through advertisements in a national publication for gay, lesbian and bisexual Christians. When Hall's involvement with the church became known, the college took the position that it would not intervene in her choice of where to attend church. But, after Hall informed her supervisor that she was a lesbian and provided him with a copy of the advertisement concerning the welcoming of homosexuals into the congregation, Hall was asked to resign. The college president testified that Hall's position at the college was one of considerable influence over students, that Hall's church's views on homosexuality were inconsistent with those of the Southern Baptist Convention and the college, and that this inconsistency created a conflict of interest. The college's mission statement provided that its mission was "an outgrowth of the mission of Baptist Memorial Hospital, which is based on the three-fold ministry of Christ: preaching, teaching, and healing."

Hall filed suit claiming religious discrimination. She alleged that she suffered discrimination because of her affiliation with and activity in her church. In upholding the finding that Hall had failed to establish a *prima facie* case under Title VII, the Sixth Circuit stated:

> The College contends that it terminated Hall because she assumed a leadership position in an organization that publicly supported homosexual lifestyles, a view that clashed with the Southern Baptist Convention's outspoken denunciation of homosexuality and the College's avowed mission. Because she exerted influence over students and student activities at the College, her leadership position at Holy Trinity conflicted with her job.... To show that her termination was based upon her religion, Hall must show that it was the *religious* aspect of her leadership position that motivated her employer's actions.... The fact that the organization in which she assumed a leadership position is a church does not transform her dismissal into one based on religion. Hall has made no additional evidentiary showing that she was fired for any reason other than taking a leadership position in an organization that condones a lifestyle the College considers antithetical to its mission.

*Hall*, 215 F.3d at 627 (emphasis in original).

The significance of the holding in the *Hall* case is the court's finding that Hall's acceptance of the homosexual lifestyle was separable from her church affiliation. Hall's discharge, based upon her activity as a proponent of Christian tolerance of homosexuality, was not based upon religion, even though the College's own objection to homosexuality was based upon the Baptist faith. The facts in *Hall* are similar to those here in that it was the behavior—the acceptance and/or practice of a homosexual lifestyle—which constituted the basis for the employment action, not the belief or practice of religion.

The plaintiffs attempt to distinguish the case on the ground that Hall challenged the College's action based upon her chosen faith, not, as alleged here, on the plaintiffs' purported refusal to comply with the employer's faith. This is a distinction without a difference. The problem the Sixth Circuit found with Hall's claim was that she had not tied her behavior to any religious divergence between employer and employee. The same failing is present here.

The religious freedoms of the plaintiffs have not been impaired by the conduct requirement of KBHC. Therefore, the claims of Pedreira and Vance for religious discrimination must be dismissed.

## B. VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

The Establishment Clause of the First Amendment dictates that "Congress shall make no law respecting the establishment of religion." Kentucky allocates federal funds as well as General Fund monies to various agencies with whom it contracts to provide services to children in need. KBHC is one of a number of agencies affiliated with a particular faith with whom Kentucky contracts. The Kentucky taxpayers allege that Kentucky's funding of KBHC violates the Establishment Clause because 1) KBHC is using these public funds for religious indoctrination of the children entrusted to its care, and 2) KBHC is a pervasively sectarian institution and, as such, is ineligible to receive such funds.

The plaintiffs also allege that public funds are being used to fund positions within KBHC under hiring practices which discriminate on the basis of religion, and thus the funding violates the Establishment Clause. That portion of the claim that is grounded on the premise that KBHC's employment practices constitute religious discrimination will be dismissed inasmuch as this court has rejected the constitutional challenge to KBHC's employee conduct requirement.

Two motions address the Establishment Clause claim. Kentucky has moved for summary judgment, contending that it funds a broad range of agencies, including KBHC, without regard to religion. Kentucky contends that this neutrality alone is sufficient to defeat an Establishment Clause claim under the recent Supreme Court case of *Mitchell v. Helms*, 530 U.S. 793, 120 S.Ct. 2530, 147 L.Ed.2d 660 (2000), as there can be no showing that any religious indoctrination can reasonably attributed to Kentucky's actions. KBHC, joined by Kentucky, contends that the facts alleged do not state a claim for violation of the Establishment Clause.

The plaintiffs have raised an "as applied" challenge to Kentucky's funding of KBHC in that they allege that federal funds, provided directly to KBHC, are being used for religious indoctrination. They claim that federally-funded secular services required to be provided to the youth in the care of KBHC are inextricably intertwined with the religious mission of the organization. The plaintiffs contend that KBHC's religious functions are inseparable from its non-religious function.

For purposes of disposition of the motions before us, we find *Bowen v. Kendrick*, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) to be instructive. *Bowen* is factually analogous to the case before us. It involved both a facial and an "as applied" challenge to the constitutionality of the Adolescent Family Life Act, a program providing grants to religious and other institutions which provided counseling on teenage sexuality. The United States Supreme Court held that the act was facially valid, but remanded the case to the district court for further findings with respect to the manner in which the Act was actually being administered. The district court had identified certain instances of impermissible behavior by grantees, but had not evaluated, to the satisfaction of the Supreme Court, whether grant money had been used to fund specifically religious activities, or whether secular purposes and religious mission of certain organizations were inextricably intertwined. In that regard, the Supreme Court indicated that

it is not enough to show that the recipient of a challenged grant is affiliated with a religious institution or that it is "religiously inspired." The District

Court should also consider on remand whether in particular cases AFLA aid has been used to fund "specifically religious activit[ies] in an otherwise substantially secular setting." *Hunt, supra* at 743, 93 S.Ct. at 2874. In *Hunt,* for example, we deemed it important that the conditions on which the aid was granted were sufficient to preclude the possibility that funds would be used for the construction of a building used for religious purposes. Here it would be relevant to determine, for example, whether the Secretary has permitted AFLA grantees to use materials that have an explicitly religious content or are designed to inculcate the views of a particular religious faith. As we have pointed out in our previous discussion, evidence that the views espoused on questions such as premarital sex, abortion, and the like happen to coincide with the religious views of the ALFA grantee would not be sufficient to show that the grant funds are being used in such a way as to have a primary effect of advancing religion ... Should the court conclude that the Secretary has wrongfully approved certain AFLA grants, an appropriate remedy would require the Secretary to withdraw such approval.

*Bowen,* 108 S.Ct. at 2580–81.

██ Here, the plaintiffs allege that public funds are being expended on care and services infused with the teachings of the Baptist faith. In this regard, they identify specific activit[ies] such as attendance at Baptist religious services, informal religious training, and inculcation of Baptist Christian values as evidencing the advancement of religion as a primary force in the KBHC program. *See,* Complaint, ¶¶ 20–25.

The plaintiffs' claim asserts more than the provision of secular services by a religiously inspired institution. It alleges specific religious activities which are purportedly incorporated into KBHC's care of children.[2] The plaintiffs concede that the funding program has a secular purpose and they acknowledge that funding is provided to both secular and sectarian institutions. However, they contend that, in the instance of KBHC, the funding has the impermissible primary effect of advancing religion, and therefore violates the Establishment Clause.

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We conclude that, under *Bowen*'s definition of "religious use," the allegations in the complaint are sufficient to state a claim upon which relief may be granted. The motion to dismiss the Establishment Clause claim will therefore be denied.

We now turn to Kentucky's assertion of entitlement to summary judgment under *Mitchell v. Helms, supra.*

*Mitchell* is factually dissimilar from this case. In *Mitchell,* the court considered the constitutionality of Chapter 2 of Title I of the Elementary and Secondary Education Act of 1965 ("ESEA"), under which the federal government distributed funds to state and local agencies who then, in turn, lent educational materials and equipment to public and private schools.

2. We distinguish these allegations from the allegation of homosexual discrimination in KBHC's hiring practices which we found to be borne of a religious value held by KBHC, but which we found did not impose any religious requirement or restriction upon employees or applicants for employment with KBHC.

Here, Kentucky provides direct monetary assistance to KBHC and other providers, rather than facilitating the use of specific educational items. The Supreme Court has "recognized special Establishment Clause dangers where the government makes direct money payments to sectarian institutions ... To be sure, the plurality does not actually hold that its theory extends to direct money payments." *Mitchell*, 120 S.Ct. at 2560–61. (O'Connor, J., concurring), *quoting, Rosenberger*, 515 U.S. at 842, 115 S.Ct. 2510, *See also, Mitchell*, at 2546–47, plurality opinion. In evaluating the implementation of the Chapter 2 program in Louisiana, the *Mitchell* court noted that 1) Chapter 2 aid was distributed on the basis of neutral, secular criteria, 2) The statute contained a safeguard requiring that Chapter 2 funds not supplant funds from non-federal sources, and 3) No Chapter 2 funds ever reached the coffers of a religious school. The evidence of actual diversion of Chapter 2 funds was also found to be *de minimus*. *See, Mitchell*, 120 S.Ct. at 2562; 2570 (O'Connor, J., concurring).

By contrast, the plaintiffs allege here that federal funds are reaching the coffers of KBHC and are being used for specifically religious activities, and they further allege that KBHC is a pervasively sectarian institution which, as such, is not eligible to receive direct monetary aid. These allegations were not made in *Mitchell*, and therefore the factual analysis in that case is neither comparable nor useful.

Further, Kentucky is not entitled to summary judgment on the sole ground of neutrality in its allocation of funds. The plurality opinion in *Mitchell*, upon which Kentucky relies, does not state a majority opinion of the Court.

**3.** We do not read *Johnson v. Economic Development Corporation of the County of Oakland,*

■ The United States Court of Appeals for the Sixth Circuit found that Justice O'Connor's concurrence in *Mitchell* states the law of the case, rather than Justice Thomas' plurality opinion written for only four justices of the court:

In regard to *Mitchell* and its sharply divided plurality, we note that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)(quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Accordingly, we find that the opinion of Justice O'Connor is the narrower of the plurality, as it utilizes the standard of *Agostini* based on a factual similarity rather than creating a new standard centered on neutrality, thereby making its mandate controlling.

*Simmons–Harris v. Zelman*, 234 F.3d 945 (6th Cir.2000). Therefore, "neutrality is an important reason for upholding government-aid programs against Establishment Clause challenges," but "neutrality is not alone sufficient to qualify the aid as constitutional." *Mitchell*, 120 S.Ct. at 2557–58 (O'Connor, J., concurring).[3] Justice O'Connor went on to state that

[t]he plurality opinion foreshadows the approval of direct monetary subsidies to religious organizations, even when they use the money to advance their religious objectives. *Id.* at 2560.

I also disagree with the plurality's conclusion that actual diversion of government aid to religious indoctrination is consistent with the Establishment

241 F.3d 501 (6th Cir.2001) to differ on this point.

Clause ... Although "[o]ur cases have permitted some government funding of secular functions performed by sectarian organizations," our decisions "provide no precedent for the use of public funds to finance religious activities." *Rosenberger, supra,* at 847, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700. *Id.* at 2558.

We conclude that Kentucky's reading of *Mitchell* does not establish entitlement to summary judgment. Since there is little in the way of evidence upon which to further address the Establishment Clause claim, the motion for summary judgment will be denied at this time, with leave to revisit the issue when the record is more fully developed.

A separate order will be entered herein this date in accordance with this opinion.