*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALICIA M. PEDREIRA; KAREN VANCE; PAUL
SIMMONS; JOHANNA W.H. VAN WIJK-BOS;
and ELWOOD STURTEVANT,
                    *Plaintiffs-Appellants,*

        *v.*

KENTUCKY BAPTIST HOMES FOR CHILDREN,
INC.; ISHMUN F. BURKS, Secretary of the
Commonwealth of Kentucky Justice and
Public Safety Cabinet; and JANIE MILLER,
Secretary of the Commonwealth of Kentucky
Cabinet for Health and Family Services,
                    *Defendants-Appellees.*

No. 08-5538

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 00-00210—Charles R. Simpson III, District Judge.

Argued: March 11, 2009

Decided and Filed: August 31, 2009

Before: CLAY and GIBBONS, Circuit Judges; GREER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Alexander Joseph Luchenitser, AMERICANS UNITED FOR
SEPARATION OF CHURCH AND STATE, Washington, D.C., for Appellants.
Jonathan David Goldberg, GOLDBERG SIMPSON, LLC, Louisville, Kentucky, John
O. Sheller, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellees.
**ON BRIEF:** Alexander Joseph Luchenitser, Ayesha N. Khan, AMERICANS UNITED
FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., David B.
Bergman, Elizabeth Leise, Alicia A.W. Truman, Joshua P. Wilson, ARNOLD &
PORTER LLP, Washington, D.C., Kenneth Y. Choe, James D. Esseks, AMERICAN
CIVIL LIBERTIES UNION FOUNDATION, New York, New York, David A.

_____

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

Friedman, William E. Sharp, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, Daniel Mach, AMERICAN CIVIL LIBERTIES UNION PROGRAM ON FREEDOM OF RELIGION & BELIEF, Washington, D.C., for Appellants. Jonathan David Goldberg, GOLDBERG SIMPSON, LLC, Louisville, Kentucky, John O. Sheller, Jeffrey A. Calabrese, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, Patrick T. Gillen, Ann Arbor, Michigan, Timothy J. Tracey, CENTER FOR LAW & RELIGIOUS FREEDOM, Springfield, Virginia, LaDonna Lynn Koebel, Josua C. Billings, COMMONWEALTH OF KENTUCKY, Frankfort, Kentucky, for Appellees. Steven W. Fitschen, THE NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, Edward L. White III, THE AMERICAN CENTER FOR LAW & JUSTICE, Ann Arbor, Michigan, for Amici Curiae.

--------------------

**OPINION**

--------------------

JULIA SMITH GIBBONS, Circuit Judge. Plaintiffs-appellants Alicia M. Pedreira, Karen Vance, and several Kentucky taxpayers[1] appeal the district court's dismissal of their claims against defendants-appellees Kentucky Baptist Homes for Children, Inc. ("KBHC"); Ishmun F. Burks, Secretary of the Commonwealth of Kentucky Justice and Public Safety Cabinet; and Janie Miller, Secretary of the Commonwealth of Kentucky Cabinet for Health and Family Services.[2] Pedreira and Vance brought suit against KBHC for its policy of firing and not hiring gay and lesbian employees, alleging discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Kentucky Civil Rights Act, and the plaintiffs brought suit against all defendants for violations of the Establishment Clause of the First Amendment. The United States District Court for the Western District of Kentucky granted KBHC's motion to dismiss the employment discrimination claims and, in a subsequent order,

---

[1] On appeal, the taxpayers are Paul Simons, Johanna W.H. Van Wijk-Bos, and Elwood Sturtevant.

[2] The plaintiffs originally sued Robert Stephens in his official capacity as the Secretary for the Commonwealth of Kentucky Justice Department and Viola P. Miller in her official capacity as the Secretary for the Commonwealth of Kentucky Cabinet for Families and Children. The Cabinet for Families and Children has since been merged with the Cabinet for Health Services to create the Cabinet for Health and Family Services, and the Justice Department has become the Justice and Public Safety Cabinet. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Ishmun F. Burks and Janie Miller are automatically substituted for former Secretaries Stephens and Miller.

dismissed the plaintiffs' First Amendment claims against all defendants because it concluded that the plaintiffs did not have standing.

For the reasons that follow, we affirm the dismissal of the plaintiffs' employment discrimination claims, but we reverse the dismissal of the plaintiffs' First Amendment claims and remand them for further proceedings.

## I.

KBHC is funded by Kentucky for its participation in the "Alternatives for Children Program," which provides placement resources for children who have been, or are at risk of being, abused or neglected. In 1998, plaintiff Alicia Pedreira was terminated from her job as a Family Specialist at Spring Meadows Children's Home, a facility owned and operated by KBHC, when members of KBHC's management discovered a photograph at the Kentucky State Fair of Pedreira and her female partner at an AIDS fundraiser. Pedreira's termination notice indicated that she was fired "because her admitted homosexual lifestyle is contrary to Kentucky Baptist Homes for Children core values." After her termination, KBHC announced as official policy that "[i]t is important that we stay true to our Christian values. Homosexuality is a lifestyle that would prohibit employment."

Karen Vance is a social worker from the Louisville area. She would have applied for positions at KBHC, but because she is a lesbian, she felt that it was futile to apply due to KBHC's formal and well-publicized policy prohibiting gays and lesbians from employment. In 2000, Pedreira and Vance brought suit against KBHC alleging violations of Title VII and the Kentucky Civil Rights Act in terminating and refusing to hire gay and lesbian employees.

This employment discrimination suit was consolidated with an action brought by Pedreira and Vance, joined by six Kentucky taxpayers,[3] against all defendants alleging

---

[3]The original taxpayer plaintiffs were Paul Simmons, Johanna W.H. Van Wijk-Bos, Elwood Sturtevant, Bob Cunningham, Jane Doe, and James Doe.

violations of the Establishment Clause. The plaintiffs claimed that KBHC is a pervasively sectarian institution that uses state and federal funds for the religious indoctrination of children. According to the plaintiffs, KBHC has received more than $100 million in state government funds since 2000. KBHC acknowledges that it has received an average of $12.5 million per year from Kentucky over the last decade, bringing the amount to approximately $125 million. Drawing on legislative documents and budget reports, the plaintiffs contend that Kentucky, in particular the Secretaries of the Justice and Public Safety Department and the Cabinet for Health and Family Services, are aware that state money is funding religious indoctrination.

The plaintiffs presented the following evidence of KBHC's sectarian mission. In its annual report, KBHC's president announced: "We know that no child's treatment plan is complete without opportunities for spiritual growth. The angels rejoiced last year as 244 of our children made decisions about their relationships with Jesus Christ." He further committed resources to KBHC's religious goals: "[W]e are committed to hiring youth ministers in each of our regions of service to direct religious activities and offer spiritual guidance to our children and families." In its news release, KBHC's president said that KBHC's "mission is to provide care and hope for hurting families through Christ-centered ministries. I want this mission to permeate our agency like the very blood throughout our bodies. I want to provide Christian support to every child, staff member, and foster parent." KBHC displays religious iconography throughout its facilities, leads group prayer before meals and during staff meetings, and requires its employees to incorporate its religious tenets in their behavior. Kentucky contracted with a private company to conduct reviews of KBHC's facilities. These reviews contain 296 interview responses from youth describing KBHC's religious practices as coercive.

The defendants filed a series of dispositive motions. The district court granted KBHC's motion to dismiss Pedreira's and Vance's claims of employment discrimination, finding that sexual orientation is not a protected class under either Title VII or the Kentucky Civil Rights Act and that Pedreira and Vance had failed to show that they had been discriminated against because of their refusal to comply with KBHC's

religion.  *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 186 F. Supp. 2d 757, 762 (W.D. Ky. 2001) ("*Pedreira I*").  The district court denied the defendants' motion for summary judgment on the First Amendment allegations, finding that the plaintiffs had adequately asserted that funding to KBHC has the impermissible effect of advancing religion and therefore violates the Establishment Clause.  *Id*. at 764.  The district court denied the plaintiffs' motion for reconsideration.  The plaintiffs filed interlocutory appeals for the dismissal of the employment discrimination claims, but the appeals were dismissed for lack of appellate jurisdiction.  *Pedreira v. Ky. Baptist Homes for Children, Inc.*, No. 3:00CV-210-S, 2007 WL 316992, at *1 (W.D. Ky. Jan. 29, 2007) ("*Pedreira II*").

In 2003, the defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), challenging the plaintiffs' standing to bring allegations of violations of the Establishment Clause.  The district court found that the plaintiffs had sufficiently alleged taxpayer standing and denied the defendants' motion.  *Pedreira v. Ky. Baptist Homes for Children, Inc.*, No. 3:00CV-210-S, slip op. at 3 (W.D. Ky. Apr. 16, 2003) ("*Pedreira III*").  The district court also permitted the plaintiffs to file an amended complaint.  *Id*.

In 2006, after mediation was attempted and failed, the plaintiffs sought to file a second amended complaint, asserting that KBHC is a state actor and suggesting a new theory of recovery.  *Pedreira II*, 2007 WL 316992, at *2.  The district court denied the motion, finding that allowing the plaintiffs' amendment would cause prejudice to the defendants and an imposition on the court's resources.  *Id*.

The parties then filed a new round of motions.  The defendants submitted, *inter alia*, two subsequent motions to dismiss for lack of subject matter jurisdiction; the plaintiffs submitted, *inter alia*, another motion for leave to file a second amended complaint and a motion for a hearing on the motions.  *Pedreira v. Ky. Baptist Homes for Children*, 553 F. Supp. 2d 853, 854 (W.D. Ky. 2008) ("*Pedreira IV*").  The district court found that the Supreme Court's recent opinion in *Hein v. Freedom From Religion*

*Foundation, Inc.*, 551 U.S. 587 (2007), narrowed taxpayer standing and granted the defendants' motion to dismiss for lack of standing that was previously denied. *Pedreira IV*, 553 F. Supp. 2d at 856.

The plaintiffs appealed to this court. The National Legal Foundation and the American Center for Law & Justice submitted *amicus* briefs in support of the defendants.

## II.

### A.       Employment Discrimination

We review a district court's grant of a motion to dismiss *de novo*. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). We must construe the complaint in the light most favorable to the plaintiffs and accept all allegations as true. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In considering a motion to dismiss, we generally look only to the plaintiffs' complaint. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

Pedreira brought suit against KBHC pursuant to the Kentucky Civil Rights Act ("KCRA"). Vance joined in the KCRA suit against KBHC and additionally alleged violations of Title VII. Vance claims that there are positions open at KBHC for which she is qualified, but she has not applied due to KBHC's policy against hiring gay and lesbian employees. However, Vance has not applied for the job and thus has not shown that her failure to be hired is due to her sexual orientation. Unlike Pedreira, Vance's injury is purely speculative as she has not carried her burden of showing "actions taken by the employer from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII or the KCRA].'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)).

She has not established standing to bring a Title VII or KCRA claim against KBHC, and we therefore analyze the employment discrimination claims with respect to Pedreira only. Because Pedreira brought a claim under the KCRA only, we dismiss all Title VII allegations against KBHC.

Because the purpose of the KCRA was "[t]o provide for execution within the state of the policies embodied in [Title VII]," Ky. Rev. Stat. § 344.020(1)(a), we apply Title VII precedent to assess Pedreira's claim under the KCRA. *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 434 (6th Cir. 2009); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). The parties do not dispute that the KCRA does not prohibit discriminatory acts based on an employee's sexual orientation. *See* Ky. Rev. Stat. § 344.040; *see also* 42 U.S.C. § 2000e-2(a)(1); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006). The issue on appeal is whether the plaintiffs' claim is covered by the KCRA's prohibition against employment discrimination on account of religion. *See* Ky. Rev. Stat. § 344.040; *see* 42 U.S.C. § 2000e-2(a). Courts have interpreted the prohibition to preclude employers from discriminating against an employee because of the employee's religion as well as because the employee fails to comply with the *employer's* religion. *See, e.g.*, *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining that Title VII's scope "include[s] the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer"); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708-09 (6th Cir. 1985). Seizing on this latter interpretation, Pedreira argues that living openly as a lesbian constitutes not complying with her employer's religion. Pedreira claims that she was terminated because she does not hold KBHC's religious belief that homosexuality is sinful.

Both parties extensively briefed the issue of whether Pedreira established a *prima facie* case of discrimination. The defendants urge us to apply the traditional *McDonnell Douglas* framework to Pedreira's claim, while Pedreira argues that we should treat this case as similar to reverse race and sex discrimination cases and view the "protected class" inquiry as inapposite. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.

2007) (finding the "protected class" element inapplicable for reverse religious discrimination claims); *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1038 (10th Cir. 1993) ("Where discrimination is not targeted against a particular religion, but against those who do not share a particular religious belief, the use of the protected class factor is inappropriate."). On a motion to dismiss, however, these arguments are premature. "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Thus, "the ordinary rules for assessing the sufficiency of a complaint apply." *Id*. at 511; *see Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (noting *Swierkiewicz*'s holding that "an employment-discrimination plaintiff satisfies her pleading burden by drafting a short and plain statement of the claim consistent with Federal Rule of Civil Procedure 8(a)." (internal quotation marks omitted)). We therefore look to see whether Pedreira has sufficiently pled "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is undisputed that KBHC fired Pedreira on account of her sexuality. However, Pedreira has not explained how this constitutes discrimination based on *religion*. Pedreira has not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion, or more particularly, her religious differences with KBHC. "To show that the termination was based on her religion, [the plaintiff] must show that it was the *religious* aspect of her [conduct] that motivated her employer's actions." *Hall*, 215 F.3d at 627. Furthermore, Pedreira does not allege that her sexual orientation is premised on her religious beliefs or lack thereof, nor does she state whether she accepts or rejects Baptist beliefs. While there may be factual situations in which an employer equates an employee's sexuality with her religious beliefs or lack thereof, in this case, Pedreira has "failed to state a claim upon which relief could be granted." *Amadasu v. Christ Hosp.*, 514 F.3d 504, 506-07 (6th Cir. 2008); *see Vickers*, 453 F.3d at 763 (dismissing a complaint of discrimination on the basis of sexual orientation for failure to state a claim under Title VII).

We therefore affirm the dismissal of Vance's and Pedreira's claims for violations of the KCRA.

**B.      Establishment Clause**

**1.**

The threshold issue for the plaintiffs' First Amendment claims is whether they have standing, defined as whether they have "allege[d] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein*, 551 U.S. at 598 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The plaintiffs have alleged standing as both federal and state taxpayers, both of which were denied by the district court. We review *de novo* a district court's determination of standing. *See Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008). In reviewing a determination of standing, we consider the complaint and the materials submitted in connection with the issue of standing. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The plaintiffs also appeal the district court's denial of their motion for leave to submit a second amended complaint and urge us to consider the information in their second amended complaint in determining standing. To the extent that the plaintiffs' second amended complaint contains new legal arguments and additional theories for recovery, the district court did not err in denying the plaintiffs' motion. Although district courts "should freely give leave [to a party to amend its pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2), district courts can exercise their discretion to deny a motion for leave to amend based on "undue delay, bad faith or dilatory motive . . . [or] futility of amendment." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (alterations in original)). Noting that the case had been pending in district court for almost seven years when the plaintiffs sought to file a second amended complaint, the district court found undue delay and denied their motion. We find that the district court did not abuse its discretion in denying the plaintiffs' motion to the extent that it contained novel substantive arguments. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006).

The district court also denied the plaintiffs' amendments clarifying their standing arguments. In determining standing, the district court properly considered the proposed amendments to the complaint "in order to ensure that [it] consider[ed] and addresse[d] fulsomely the standing arguments." *Pedreira IV*, 553 F. Supp. 2d at 854-55. Finding that the proposed amendments still would not suffice to demonstrate standing, the district court denied the plaintiffs' motion for leave to amend their complaint. When a motion for leave is denied because the amended complaint would not withstand a motion to dismiss, we review the judgment of the district court *de novo* because the decision was based on a legal conclusion. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008). In determining whether the district court correctly found that the plaintiffs' amendments were insufficient to establish standing, we will consider the plaintiffs' amendments in the second amended complaint and the related exhibits as they relate to standing only.

*(a.) Federal Taxpayer Standing*

Generally, individuals lack standing when their only interest in the matter is as a taxpayer. *Frothingham v. Mellon*, 262 U.S. 447, 485-86 (1923). After forty-five years of "an impenetrable barrier" to taxpayer standing, the Supreme Court announced a narrow exception for the plaintiffs who could show that their alleged injury satisfies the following two-part test:

> First, the taxpayer must establish a logical link between that [taxpayer] status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, [§] 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, [§] 8.

*Flast v. Cohen*, 392 U.S. 83, 102-03 (1968).  The Supreme Court reaffirmed that individuals could not use their status as federal taxpayers to bring general grievances to court but held that taxpayers "will have standing consistent with Article III to invoke federal judicial power when [they] allege[] that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power."  *Id*. at 105-06.  In *Hein*, the Supreme Court confirmed that the nexus had to be between the taxpayer and a legislative action, clarifying that the exception articulated in *Flast* does not apply "to a purely discretionary Executive Branch expenditure." 551 U.S. at 615.  Nevertheless, taxpayers still have standing to challenge legislative disbursements over which agencies have executive discretion.  *See Bowen v. Kendrick*, 487 U.S. 618-19 (1988).

The plaintiffs claim in their complaint that they have standing as federal taxpayers.  In their amended complaint, they refer to the Kentucky statutes authorizing the funding of services such as KBHC.  However, nowhere in the record before the district court did the plaintiffs explain what the nexus is between their suit and a *federal* legislative action.  The district court found that the plaintiffs' allegations were more akin to those in *Hein*, which raised a general Establishment Clause challenge to federal agencies' use of federal money to promote the President's faith-based initiatives.  551 U.S. at 595-96.  Relying on *Hein*'s analysis, the district court similarly dismissed the plaintiffs' claims because they "fail[] to allege any particular appropriation, and thus obviously also fail[] to allege any legislative action."  *Pedreira IV*, 553 F. Supp. 2d at 861.  The plaintiffs sought leave to file a second amended complaint that added references to state and federal funding provisions in support of standing.  The district court denied their motion but found that even if it had considered the new complaint, their "additional allegations do not save the claim."  *Id.*

On appeal, the plaintiffs refer to the same state and federal provisions to support standing as they presented to the district court in their proffered second amended complaint.  Looking at the record that was before the district court, we find that the plaintiffs have not alleged a sufficient nexus to show federal taxpayer standing.  Even

considering the proposed second amended complaint, as the district court did, the question before us is whether the plaintiffs' invocation of Social Security Act's Title IV-E and Supplemental Security Income programs, codified at 42 U.S.C. §§ 670-679b and 42 U.S.C. §§ 1381-1383f, respectively, as congressional authorization of funds to KBHC satisfies *Flast*. Various statutes governing these programs authorize federal funding for states to provide foster care and maintenance for children. *See* 42 U.S.C. §§ 670-679b. Under a complex statutory scheme, states are entitled to payments for childcare, including for child placement services such as those provided by KBHC. *See* 42 U.S.C. § 674(a)(3). Drawing on the fact that federal funds from these programs are regularly funneled to service providers in Kentucky, the plaintiffs argue that these programs are specific legislative actions for purposes of satisfying the first prong of the *Flast* test.

Even though the plaintiffs refer to specific federal programs and specific portions of these programs, they have failed to explain how these programs are related to the alleged constitutional violation. These statutes are general funding provisions for childcare; they do not contemplate religious indoctrination. The plaintiffs respond that the statutes do not *forbid* unconstitutional uses of these funds. A failure to prohibit unconstitutionality, however, does not equate to an unconstitutional congressional funding mandate. While the plaintiffs do challenge congressional legislation, as required by *Flast*, 392 U.S. at 102, the plaintiffs' claims are simply too attenuated to form a sufficient nexus between the legislation and the alleged violations. *Compare with Bowen*, 487 U.S. at 620 (finding that the plaintiffs had alleged a sufficient nexus between the specific legislative action of the Adolescent Family Life Act and alleged violations of the religious clauses of the First Amendment).

*(b.) State Taxpayer Standing*

As with federal taxpayer standing, the plaintiffs must demonstrate "a good-faith pocketbook" injury to demonstrate state taxpayer standing. *See Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952); *Taub v. Kentucky*, 842 F.2d 912,

918 (6th Cir. 1988).  The defendants argue that the plaintiffs must also show a nexus. Each requirement will be addressed in turn.

### i. Injury

The plaintiffs point to the alleged $100 million received by KBHC from Kentucky as the requisite "pocketbook" injury.  *Doremus*, 342 U.S. at 434.  The Kentucky legislature established a regulatory structure to authorize the placement of children with private facilities.  *See, e.g.*, Ky. Rev. Stat. § 200.115, § 605.090(1)(d). According to the plaintiffs, Kentucky was well aware that it was funding KBHC and that its funds were used to finance religious activity.  Defendants former Secretary of the Justice Cabinet and former Secretary of the Cabinet for Families and Children attempted to terminate the contractual relationship between KBHC and Kentucky because they were worried about the state "endorsing – or at least through our funding – giving some sort of state sanction to a religious practice."  Pointing to material submitted by KBHC, the plaintiffs show that the Kentucky legislature itself was aware that it was funding KBHC when it issued a legislative citation thanking KBHC for its work with children. Ky. H.R. Jour., 2006 Reg. Sess. No. 57, Mar. 24, 2006, Legislative Citation No. 142. Furthermore, the Kentucky legislature also appropriated sums of money specifically to KBHC.  2005 Ky. Laws Ch. 173 (HB 267) (H)(10)(5), *available at* http://www.lrc.ky.gov/record/05RS/HB267.htm.  Unlike in the federal taxpayer analysis, the plaintiffs have alleged a "concrete and particularized" injury.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  These legislative acts show a direct injury to the plaintiffs, as their tax money is funding KBHC and constitutes "lost revenue." *Johnson v. Econ. Dev. Corp. of County of Oakland*, 241 F.3d 501, 507 (6th Cir. 2001).[4]

---

[4]The district court initially found that the plaintiffs had established standing by demonstrating that KBHC received federal and state funds and alleging that KBHC was a pervasively sectarian institution.  *Pedreira III*, slip op. at 3.  The district court reconsidered its decision in light of *Hein* and found that the plaintiffs did not have standing.  However, *Hein* did not change the standards for standing. As the Supreme Court announced:

> Over the years, *Flast* has been defended by some and criticized by others. But the present case does not require us to reconsider that precedent.  The Court of Appeals did

*ii. Nexus*

The defendants cite a Seventh Circuit decision to show that at least one court has required a demonstration of nexus for state taxpayer standing. *Hinrichs v. Speaker of House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 598 (7th Cir. 2007). In response, the plaintiffs rely on Supreme Court and Sixth Circuit cases to argue that they do not have to satisfy the *Flast* nexus test to establish state taxpayer standing. *See Johnson*, 241 F.3d at 507 (rejecting defendants' argument that state taxpayers must show a nexus to satisfy the standing requirement). They contend that alleging a direct injury is sufficient. *See Doremus*, 342 U.S. at 434.

As previously noted by this court, "[v]ery few cases have dealt with state taxpayer standing as it relates to the Establishment Clause." *Johnson*, 241 F.3d at 507. Furthermore, this court has not addressed state taxpayer standing at all since the Supreme Court's decisions in *DaimlerChrysler* or *Hein*. In *DaimlerChrysler*, the Supreme Court confirmed that the logic and reasoning of the standing analysis for federal taxpayers extends to state taxpayers. 547 U.S. at 345. Nevertheless, the Supreme Court did not apply the *Flast* nexus requirement in *DaimlerChrysler*. *See id.* Instead, the Supreme Court applied the injury requirement, which has always been applicable to both federal and state taxpayers, and found that the plaintiffs did not sufficiently plead an injury: "We then reiterate[d] what we had said in rejecting a federal taxpayer challenge to a federal statute 'as equally true when a state Act is assailed: The [taxpayer] must be able to show . . . that he has sustained . . . some direct injury . . . and

_____

not apply *Flast*; it extended *Flast*. It is a necessary concomitant of the doctrine of *stare decisis* that a precedent is not always expanded to the limit of its logic. That was the approach that then-Justice Rehnquist took in his opinion for the Court in *Valley Forge*, and it is the approach we take here. We do not extend *Flast*, but we also do not overrule it. We leave *Flast* as we found it.

*Hein*, 551 U.S. at 614-15. As this court recently stated in rejecting a similar attempt to use *Hein* to limit taxpayer standing, *Hein* "did not erect a new barrier to taxpayer suits; it marked the boundaries of an existing exception to the rule against federal and state taxpayer standing." *Am. Athiests, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 285-86 (6th Cir. 2009). Because *Hein* explicitly refused to alter the standards for taxpayer standing, there is no reason for the district court to have interpreted *Hein* to change the requirements for standing. As the district court initially found, the plaintiffs have demonstrated sufficient injury to plead taxpayer standing.

not merely that he suffers in some indefinite way in common with people generally." *Id*. (internal quotation marks and citations omitted) (alterations in original).

Noting that no Supreme Court or Sixth Circuit case has applied the nexus test to analyze state taxpayer standing, even while discussing the similarities of the two analyses, we decline to find that *Hein* overrules our precedent that specifically instructs that nexus is *un*necessary in state taxpayer cases. *See Johnson*, 241 F.3d at 507.

Even if there were a nexus requirement, the plaintiffs have sufficiently demonstrated a link between the challenged legislative actions and the alleged constitutional violations, namely that Kentucky's statutory funding for neglected children in private childcare facilities knowingly and impermissibly funds a religious organization. As discussed above, the plaintiffs have pointed to Kentucky statutory authority, legislative citations acknowledging KBHC's participation, and specific legislative appropriations to KBHC. Through these specifications, the plaintiffs have demonstrated a nexus between Kentucky and its allegedly impermissible funding of a pervasively sectarian institution. *See Ams. United for Separation of Church & State v. Sch. Dist. of City of Grand Rapids*, 718 F.2d 1389, 1416 (6th Cir. 1983) ("Had plaintiffs challenged the constitutionality of these [state] legislative enactments, they may possibly have invoked taxpayer standing . . . ."). This case thus falls squarely within the line of cases where the Supreme Court and our sister circuits have upheld taxpayer standing when grants, contracts, or other tax-funded aid are provided to private religious organizations pursuant to explicit legislative authorization. *See, e.g.*, *Bowen*, 487 U.S. at 619-20; *Flast*, 392 U.S. at 103-04; *Freedom from Religion Found., Inc. v. Bugher*, 249 F.3d 606, 609-10 (7th Cir. 2001); *DeStefano v. Emergency Hous. Group, Inc.*, 247 F.3d 397, 403-05 (2d Cir. 2001); *Lamont v. Woods*, 948 F.2d 825, 829-31 (2d Cir. 1991); *Pulido v. Bennett*, 860 F.2d 296, 297-98 (8th Cir. 1988). Finding that the plaintiffs have sufficiently demonstrated standing as state taxpayers, we reverse the judgment of the

district court.**5**   To the extent that the second amended complaint and supporting documents clarified the plaintiffs' standing arguments, we reverse the district court's denial of the plaintiffs' motion for leave to amend with respect to the amendments regarding standing only.

**2.**

The plaintiffs also claim that the district court erred in prohibiting them from presenting evidence related to Pedreira's termination in support of their First Amendment claim.  The district court dismissed Pedreira's and Vance's employment discrimination claims and also dismissed the portion of the plaintiffs' First Amendment claims that was grounded on Pedreira's termination.  To the extent that the plaintiffs seek to restate Pedreira's employment discrimination claim as a constitutional one, we affirm the judgment of the district court.  The termination of Pedreira based on her sexual orientation is not a violation of the Establishment Clause because, as noted above, she has not established discrimination based on religion.

However, the fact that Pedreira has not presented an employment discrimination claim based on her termination does not mean that KBHC's hiring practices are not relevant for the First Amendment inquiry.  In fact, courts routinely look to employment policies to shed light on the sectarian nature of an institution for purposes of the Establishment Clause.  *See, e.g.*, *Roemer v. Bd. of Public Works of Md.*, 426 U.S. 736, 757 (1976); *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 767-68 (1973); *Hunt v. McNair*, 413 U.S. 734, 743-44 (1973); *Johnson*, 241 F.3d at 504-05; *see also Columbia Union Coll. v. Clarke*, 159 F.3d 151, 163 (4th Cir. 1998) (adopting a four-factor test based on Supreme Court precedent for the determination of whether a school is pervasively sectarian for First Amendment purposes that includes "how much

---

**5**The American Center for Law and Justice argues in its *amicus* brief that interests of federalism and separation of powers counsel against finding standing.  These concerns are taken into consideration by the strict requirement for taxpayer standing.  As the *amicus* brief itself notes, "[r]equiring a distinct and palpable injury for state taxpayers comports with notions of federalism that are central to our system of government." *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1402 (10th Cir. 1992).  The plaintiffs have met this high burden and thus established state taxpayer standing.

do the religious preferences shape the . . . hiring and student admission processes" as a factor). KBHC concedes that its policy of firing and not hiring gays and lesbians is religiously inspired. Although a religiously inspired employee conduct rule is not sufficient to constitute discrimination on the basis of religion, it is relevant to an inquiry under the Establishment Clause. We thus reverse the district court's dismissal of this portion of the plaintiffs' First Amendment claim to the extent that it prohibits plaintiffs from presenting evidence of KBHC's hiring practices.[6]

## III.

For the foregoing reasons, we affirm the dismissal of the plaintiffs' employment discrimination claims and reverse and remand for further proceedings the plaintiffs' First Amendment claims.

---

[6]The defendants have not appealed the denial of their motion for summary judgment. Now that the dismissal of the plaintiffs' claims is reversed, the plaintiffs may proceed with their claims on remand.